**Dianne M. SAYE, Plaintiff-Appellant,**

v.

**ST. VRAIN VALLEY SCHOOL DISTRICT RE–1J and Vicki Ploussard, Defendants-Appellees.**

No. 83–2160.

United States Court of Appeals, Tenth Circuit.

March 10, 1986.

William P. Bethke (Larry F. Hobbs and Vonda G. Hall, with him on brief), of Hobbs/Bethke & Associates, Denver, Colo., for plaintiff-appellant.

Richard N. Lyons (Daniel F. Bernard, with him on brief), of Grant, McCarren & Bernard, Longmont, Colo., for defendants-appellees.

Before SEYMOUR, SETH, Circuit Judges, and ELLISON,[*] District Judge.

SEYMOUR, Circuit Judge.

Dianne Saye brought this action under 42 U.S.C. § 1983 (1982) against Saint Vrain Valley School District and Vicki Ploussard, the principal of Frederick Elementary School in the District. Saye taught special education classes at Frederick for three years as a probationary employee. Plous-

sard was Saye's supervisor for the last year and a half of her employment. Saye alleges that her First and Fourteenth Amendment rights were violated when the District followed Ploussard's recommendation not to renew her teaching contract because Ploussard's decision was in retaliation for Saye's exercise of her rights to free speech and association. After Saye had presented her case to the jury, the district court granted defendants' motion for a directed verdict. Saye appeals, and we affirm in part and reverse in part.

I.

The following undisputed facts describe the circumstances giving rise to this litigation. Saye first taught at Frederick for the 1978–79 school year and received favorable reports and evaluations from her supervising principal, Amin Wahab. Wahab left Frederick in the fall of 1979. The assistant principal, Roger Rugg, then became acting principal until January 1980, when Ploussard took over. Ploussard continued as Saye's supervising principal for the 1980–81 school year, Saye's third and last year at Frederick.

During Saye's second year at Frederick, she had a particularly disruptive student in her special education class. In early March of 1980, Ploussard prepared Saye's annual evaluation for the 1979–80 school year. Although Ploussard's report was very positive and recommended renewal of Saye's contract, Ploussard also recommended that Saye be considered for a transfer because she thought Saye had become emotionally distraught over the misbehavior of this student. Ploussard stated that her transfer recommendation should not reflect negatively on her high regard for Saye's teaching ability, that the proposed transfer would avoid teacher "burn-out" and allow another teacher to become involved with the student and his parents. In April 1980, Ploussard indicated in a memo that she was reconsidering her favorable report of the

* Honorable James O. Ellison, United States District Judge for the Northern District of Oklahoma, sitting by designation.

previous month in light of Saye's continuing problems with this student and the possibility of legal action instituted by his parents. Ploussard stated that she could recommend transfer rather than nonrenewal only because of Saye's prior good reports, and that Saye should be closely supervised and evaluated during the coming year before she was given tenure.

Saye was not transferred and began her third year of teaching at Frederick in fall of 1980. The disruptive student was no longer in Saye's classroom, and Ploussard had cut her teacher aide time by more than half. Saye was upset about the way in which aide time had been allocated, and in early September she called Elizabeth McCall, the assistant director of special education, about the matter. In addition, Saye worked out a different aide arrangement with another teacher. As a result of Saye's activity regarding the aide situation, other teachers and aides became upset, one aide threatened to quit, and Ploussard held several meetings to resolve the problem. At one of these meetings Saye apologized for upsetting anyone.

Saye also discussed aide time with the mothers of two students in her special education class. Thereafter one parent got in touch with the director of special education, Mr. Ronayne. A meeting was held on November 24, 1980, among Ronayne, McCall, Ploussard, and the two parents, at which alternatives to the use of aides were explained. In a subsequent evaluation recommending Saye's nonrenewal, McCall and Ploussard stated that Saye had not properly presented the aide time issue to the parents, precipitating the need for the meeting.

Saye was elected faculty representative for the district's education association in September of her third year. The faculty representative acted as an intermediary between teachers and the principal or the administration. During the fall of 1980, Saye relayed information to the faculty on contract negotiations and allegedly began hearing complaints from other teachers about Ploussard's practices as principal.

Saye discussed the handling of these complaints with two prior faculty representatives, and a decision was made to hold a meeting at which the teachers could discuss these issues with Craig Russell, who provided national and state education association services to local associations and coordinated and led local union activities. The notice of the meeting was put in general terms, and did not indicate that Ploussard's activities as principal would be on the agenda.

Saye decided to avoid the meeting, which was scheduled for the end of the school day on November 5, 1980. Although she called in sick, she spent the day skiing with her husband and was subsequently reprimanded and docked a day's pay. Immediately after the meeting, Russell discussed with Ploussard the issues that had come up.

On January 26, 1981, Ploussard gave Saye a written memo describing Saye's role in precipitating the student aide situation that had arisen in early September. Ploussard stated that she was considering using the memo as grounds for recommending Saye's nonrenewal. Saye filed a union grievance on February 11, 1980, alleging that the memo was harassment in retaliation for her activities as faculty representative. On February 13, Saye received a written memo from Ploussard and McCall stating that they were seriously considering not recommending her for re-employment and setting out seven reasons supporting nonrenewal, one of which concerned Saye's discussion of the student aide situation with the two parents. Ploussard prepared Saye's annual evaluation report on February 24 and recommended nonrenewal. The District superintendent, Keith Blue, followed Ploussard's recommendation in presenting the issue to the District School Board, and the Board voted not to re-employ Saye.

On appeal, Saye contends that her discussion of the student aide issue with parents and her activities as faculty representative were protected by the First Amendment. She alleges that the trial court erred in directing a verdict for defendants on these

claims because an issue of fact exists as to whether her employment was terminated in retaliation for her exercise of these rights. In granting defendants' motion, the district judge held that to the extent the student aide issue was a matter of public concern, the manner in which Saye raised the issue was so disruptive that her speech was not constitutionally protected. The court further found no merit to the claim based on Saye's union activity because she had intentionally absented herself from the meeting. We affirm the district court's dismissal of Saye's claim arising from her speech about the student aide issue. However, we conclude that a fact issue exists on whether Saye's constitutionally protected union activities were a motivating factor in the nonrenewal decision, and we reverse and remand for further proceedings on that claim.

## II.

■ As an initial matter, we address the standard of review applicable to our consideration of the lower court's grant of a directed verdict in this case. The Supreme Court discussed the analysis governing a public employee's claim that an adverse employment decision violates the right to free speech in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). There the Court pointed out that "[t]he inquiry into the protected status of speech is one of law, not fact," and that a district court's views on this issue are therefore not subject to the clearly erroneous standard of review. *Id.* at 1690 n. 7. An appellate court must make "an independent constitutional judgment" on whether, under the particular circumstances, the statements at issue are constitutionally protected. *Id.* at 1692 n. 10 (quoting *Jacobellis v. Ohio,* 378 U.S. 184, 190, 84 S.Ct. 1676, 1679, 12 L.Ed.2d 793 (1964) (opinion of Brennan, J.)). However, the underlying historical facts upon which the constitutional claim is grounded are subject to the traditional standards of review governing the treatment of historical facts in any other case. *See Gonzalez v. Benavides,* 712 F.2d 142, 145 (5th Cir. 1983); *see generally Miller v. Fenton,* ——

U.S. ——, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985) (subsidiary factual questions regarding voluntariness of confession); *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 1958–60 & n. 17, 80 L.Ed.2d 502 (1984) (facts requiring application of ordinary logic and common experience distinguished from those requiring independent review by appellate court).

■ In reviewing the propriety of a grant of a directed verdict, a court must view the evidence most favorably to the nonmoving party and give her the benefit of all fair inferences to be drawn from the evidence even though reasonably contrary inferences may be drawn. *Martin v. Unit Rig & Equipment Co.,* 715 F.2d 1434, 1438 (10th Cir.1983). A directed verdict is appropriate only when the facts and inferences, thus viewed, point so strongly in favor of one party that reasonable minds could not come to a different conclusion. *Dataq, Inc. v. Tokheim Corp.,* 736 F.2d 601, 603 (10th Cir.1984). Accordingly, we must view the historical facts in this case most favorably to Saye in deciding whether a factual controversy exists which precludes a directed verdict for defendants.

## III.

Saye contends that her right to free speech was violated when the decision not to renew her employment was based in part on her discussion with two parents of the amount of student aide time she had been allocated. The courts employ a three-part analysis in evaluating a public employee's claim that an adverse employment decision violates protected First Amendment rights. *See Childers v. Independent School District,* 676 F.2d 1338, 1341 (10th Cir.1982).

"Under this test, an employee's First Amendment rights are protected unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee.

"If an employee's activities are protected, ... he must then demonstrate that this conduct was a 'motivating factor' in the detrimental employment decision. The employer 'then bears the burden of showing by a preponderance of the evidence that it would have reached the same decision ... in the absence of the protected activity.'"

*Id.* (citations omitted).

The Court in *Connick* considered the factors relevant to deciding when an employee's right to speak is constitutionally protected, and reaffirmed its prior holdings that this determination is to be made under the guidelines set out in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick*, 103 S.Ct. at 1687 (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734). The Court made clear that if a public employee's speech "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary ... to scrutinize the reasons for her discharge." *Id.* at 1689. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 1690.

■ The trial court questioned whether the speech at issue here concerned a matter of public importance. We agree. The allocation of aide time among teachers is not a matter inherently of public concern. *See id.* at 1691 n. 8. Moreover, Saye did not raise the aide issue in a public forum, nor did she challenge the total amount of aide time as inadequate. The circumstances in which the discussions here occurred indicate that Saye's speech, like that in *Connick*, was a mere extension of her dispute with Ploussard over the amount of aide time *she* had been given, *see id.* at 1690, and an attempt "to gather ammunition for

another round of controversy with her superiors," *id.* at 1691. These factors strongly indicate that Saye was speaking "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest...." *Id.* at 1690.

Even assuming that Saye's lack of aide time touched on a matter of public concern, we agree with the trial court that the manner in which she raised the issue justified the adverse response by Ploussard. "[T]he state's burden in justifying a particular discharge varies depending upon the nature of the employee's expression." *Id.* at 1691–92. The parents of a child receiving special education must work closely and trustfully with teachers and administrators in implementing the legally mandated individualized education program for that child. Saye's discussions with the two parents here disrupted that necessary relationship and required defendants to call a meeting to explain the situation and to attempt to reestablish an amicable and cooperative atmosphere. "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employers' judgment is appropriate." *Id.* at 1692. In addition, "[w]hen employee speech concerning office policy arises from an employment dispute concerning the very application of that policy to the speaker, additional weight must be given to the supervisor's view that the employee has threatened the authority of the employer to run the office." *Id.* at 1693.

In sum, the speech was at most tangential to a matter of public concern, and had an adverse impact on the school's ability to carry out its teaching responsibilities. Based on the factors considered by the Court in *Connick*, we conclude that Saye's speech, to the extent it raised an issue of public concern, was so disruptive that it is not entitled to constitutional protection. Accordingly, we affirm the grant of directed verdict on that claim.

## IV.

■ We reach a different conclusion with respect to Saye's claim that her right

to association was violated because her termination was in retaliation for her activities as faculty representative.[1] The right to participate in union activities may be abridged by a state employer only when the limitation is narrowly drawn to further a substantial state interest. *Key v. Rutherford*, 645 F.2d 880, 885 (10th Cir.1981).[2] Defendants here do not argue that they acted to protect such an interest; indeed they argue instead that Saye's union participation played no part in the adverse decision. We thus conclude that Saye's union activities were constitutionally protected.

As set out in Part III, *supra*, Saye bears the burden of establishing that her constitutionally protected conduct was a motivating factor in the adverse employment decision. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). We disagree with the trial court's conclusion that there was *no* evidence that Saye's union activity bore on the decision not to renew her contract. The evidence in this case, when viewed most favorably to Saye, raises as a fact issue whether Ploussard's decision to recommend nonrenewal was motivated in part by Saye's action as faculty representative in calling the November teachers' meeting. Saye filed a grievance over Ploussard's adverse January 26 memo because she thought she was being harassed for calling the meeting, Russell testified that he had heard Ploussard was upset about the meeting, and a teacher at Frederick testified that after the meeting Ploussard had told her the faculty should get a new representative, directly contradicting Ploussard's testimony that she made no such suggestion. Saye subsequently resigned her union position. Russell also testified he had told Superintendent Blue that Ploussard's involvement in

the union's activities was unjust, unfair, and unnecessary, and that there appeared to be some harassment and retaliation taking place.

We conclude that this evidence is sufficient to send the motivating factor issue to the jury, and that the directed verdict for defendants on this claim was therefore improper. We reject defendants' argument that Saye's union activity could not have been a motivating factor because none of the school board members who voted not to renew Saye's employment were aware of her union involvement. As cited above, there was testimony that Superintendent Blue was told about Saye's actions as faculty representative and about the possibility that she had been subjected to harassment and retaliation by Ploussard. Blue testified that he relied on Ploussard's recommendation to a substantial extent in presenting the matter to the School Board, and that the February 13 memo from Ploussard and McCall was the most important factor in his nonrenewal recommendation to the Board. School Board members stated by deposition that they had relied completely on the recommendations of the administration in voting not to renew Saye. "Where this line of causation exists, and the principal or superintendent predicated their recommendations on constitutionally impermissible reasons, these reasons become the basis of the decision by the Board members." *Hickman v. Valley Local School District Board of Education*, 619 F.2d 606, 610 (6th Cir.1980); *see also Professional Association of College Educators v. El Paso County Community College District*, 730 F.2d 258, 266 (5th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984). Accordingly,

---

1. Defendants concede on appeal that the associational right to engage in union activity is not subject to the requirement that the matter involved be one of public concern. *See Gavrilles v. O'Connor*, 579 F.Supp. 301, 304 & note (D.Mass.1984).

2. In *Key*, we recognized that a state employer may have a compelling interest in prohibiting

union activity by supervisory personnel in order to maintain discipline by supervisors and to preserve their undivided loyalty. Those considerations are not relevant here. *See also Columbus Educ. Ass'n v. Columbus City School Dist.* 623 F.2d 1155, 1160 (6th Cir.1980) (examination of state's interest in burdening teacher's right to act as building representative).

we reverse and remand for a new trial on this issue.

The action is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.