Norma J. WARE, Plaintiff–Appellant,

v.

UNIFIED SCHOOL DISTRICT NO. 492, BUTLER COUNTY, STATE OF KANSAS; Board of Education, Unified School District No. 492, Butler County, State of Kansas and Larry L. Geil, Superintendent of Schools, Defendants–Appellees.

No. 86–1081.

United States Court of Appeals, Tenth Circuit.

Aug. 4, 1989.

Philip A. Hamm, El Dorado, Kan., for plaintiff-appellant.

Mary Kathleen Babcock (Timothy B. Mustaine with her, on the brief), of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendant-appellee, Unified School Dist. No. 492.

Daniel J. Sevart, of Sevart & Sevart, Wichita, Kan., for defendant-appellee, Larry L. Geil.

Before McKAY, SEYMOUR, and BARRETT, Circuit Judges.

SEYMOUR, Circuit Judge.

Norma Ware brought this action under 42 U.S.C. § 1983 (1982) against Unified School District No. 492, the District school board, and Larry Geil, the District superintendent. Ware, who had been Geil's secretary and the school board clerk, alleged that defendants terminated her employment in retaliation for her exercise of free speech rights protected by the First and Fourteenth Amendments. The district court assumed that Ware's speech was constitutionally protected but entered a directed verdict for the school board, concluding Ware had presented no evidence that her speech played a part in the board's decision to terminate her. The court granted Geil's motion for a j.n.o.v. following a jury verdict against him, holding that Ware had failed to present sufficient evidence that her speech was a motivating factor in Geil's decision to recommend her termination to the board. We reverse.

I

Norma Ware's employment was terminated on April 8, 1980. At the time of her dismissal, Ware had worked for the school district for sixteen years and as Geil's secretary for nine years. A major part of her secretarial duties included keeping the school financial records and doing the payroll. She also served as clerk for the board of education from 1968 until her termination.

During the year prior to Ware's dismissal, Geil and the board developed a master plan for the entire school district that included a proposed bond issue to raise funds for construction of a new school building and for maintenance and repairs to old buildings. Ware generally agreed with the bond issue, but in discussions with school district patrons and some school board members, she expressed disapproval of a proposal to seek money for certain repairs.

Ware and Geil had two conversations involving the bond issue. Ware testified that on February 26, 1980, Geil asked her why she opposed the bond issue and she responded "exactly what I had said all the time, that I felt like there was a lot of maintenance work in there that we should have already completed." Rec., vol. V, at 59. Although Ware testified that Geil told her he did not think someone in her position as clerk of the board should openly oppose the bond issue, he denied telling Ware not to oppose it. After their discussion, Ware stopped calling patrons or oth-

erwise openly talking about the bond issue. The bond issue was hotly contested but passed by a small margin on March 18, 1980.

The second conversation occurred on April 2, when Geil informed Ware he was going to recommend that the board not renew her contract, and gave three reasons for the recommendation: poor working relationships in the office; his belief that working on the bond issue would upset Ware; and Ware's resistance to typing, authority, computers, and changes in the office. That evening, Ware and her husband called several members of the school board either complaining that Ware was being fired over the bond issue or asking why Ware was being dismissed. The next day, Geil had the locks on the school office changed and did not give Ware a key.

At the April 8 board meeting, the board reviewed employment contracts for all non-certified personnel. An unusually large number of people attended the meeting due to efforts to rally support for Ware, and the bond issue was a topic of discussion from the floor. After the board went into executive session, Geil made a formal recommendation not to renew Ware's contract, listing several reasons for his recommendation, including his belief that it would be impossible for him and Ware to continue working together in the future. Although Ware and her attorney were permitted to attend the second half of the executive session, Ware's attorney advised her to remain silent. When confronted with Geil's list of reasons, she objected only to the accusation of having alcohol on her breath at work. The board asked Ware one question.[1] Board member Remsburg moved to reject Geil's recommendation concerning Ware's contract, but his motion was voted down. A second motion to accept all Geil's recommendations concerning noncertified personnel, including nonrenewal of Ware's contract, passed by a four to three vote. Ware never returned to work.

## II

■ We begin by addressing defendants' argument that Ware's speech on the bond issue is not constitutionally protected. Although the trial court assumed the speech was protected in deciding in favor of defendants on other grounds, "we can affirm on any grounds that find support in the record." *Colorado Flying Academy, Inc. v. U.S.*, 724 F.2d 871, 880 (10th Cir.1984). Moreover, while the sufficiency of the underlying historical facts is determined by the traditional standard of review, the protected nature of Ware's speech is subject to our independent constitutional judgment. *Saye v. St. Vrain Valley School Dist. RE-1J*, 785 F.2d 862, 865 (10th Cir.1986). In assessing the status of Ware's speech, we view the historical facts most favorably to Ware and give her the benefit of all reasonable inferences to be drawn from the evidence. *Id.*

■ In determining whether a public employee's speech is entitled to First Amendment protection, a court must first consider whether the speech relates to a matter of public concern, that is, a "matter of political, social, or other concern to the community." *Connick v. Meyers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). The plaintiff must also present evidence that the speech itself was of general interest rather than of purely personal significance. *See Saye*, 785 F.2d at 866; *Wren v. Spurlock*, 798 F.2d 1313, 1317–18 & n. 1 (10th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987); *Wilson v. City of Littleton*, 732 F.2d 765, 768–69 (10th Cir.1984). Ware met this burden with evidence that the bond issue was a matter of widespread

---

**1.** Testimony indicates that one board member asked Ware whether she could continue working after what had happened. The record is internally inconsistent in the transcription of Ware's reply. Although the record at one point shows that Ware answered she could not continue working, we are convinced that this is a transcription error. Considering all the testimony on the question to Ware and her answer, we believe the record reflects that Ware said she *could* continue to work. At least one witness testified that Ware had added the phrase "with great difficulty," although at trial Ware denied making this addition. The district court stated that Ware had answered the question with "a qualified 'yes.'" Rec., vol. I, doc. 64, at 7.

community interest and that the content of her speech contributed to the public debate on that issue.

When the speech is a matter of public concern, the court must then balance the interest of a public employee in commenting on such matters and the interest of the employer in promoting the efficiency of its public services. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). Under the *Pickering* test, an employee's First Amendment rights are protected " 'unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee.' " *Wren*, 798 F.2d at 1318 (quoting *Childers v. Ind. School Dist. of Bryan Cty.*, 676 F.2d 1338, 1341 (10th Cir.1982)). The employer's burden to justify its restriction on speech increases in proportion to the value of that speech in the public debate. *See Connick*, 461 U.S. at 152, 103 S.Ct. at 16; *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir.1988) (per curiam). In focusing on the effective functioning of the employer's enterprise, a court should consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987).

■ On appeal, defendants contend that they were justified in terminating Ware because she and Geil had a confidential employment relationship that was compromised by their disagreement over the bond issue. Whatever merit this argument might have in the abstract, it is fatally undermined by defendants' failure to assert it at trial or present any evidence to support it. Although Geil testified that his action was based in part on a deteriorating work atmosphere, he attributed it to factors other than Ware's public statements on the bond issue. Indeed, Geil testified that Ware's stance on the bond issue

played no part in his decision to recommend her termination. Neither did he offer the disruptive effect of Ware's speech as a basis for his action either to Ware or to the school board. Those testifying board members who voted in favor of Geil's recommendation also stated that Ware's speech had no bearing on their vote.

Under these circumstances it is difficult to give credence to defendants' argument on appeal that Ware's speech was so disruptive it justified her termination, particularly in view of independent evidence that the effective functioning of the office was not affected by Ware's speech. Marguerite Banks, the secretary who shared an office with Ware, Geil and the high school principal, Neill Wheeler, testified that she did not observe any change in Ware's relationship with Geil or Wheeler that led her to believe Ware would be fired. She described the office atmosphere as friendly most of the time. The evidence was undisputed that Ware had never revealed any confidential information and that her position on the bond issue was based on facts available to the public. On April 1, only a day before Geil told her he was recommending her termination, the state auditors praised her work. In sum, the record contains no evidence that Ware's speech interfered with the efficient functioning of Geil's office or impeded the performance either of Ware or those with whom she worked. Consequently, we conclude that her speech is entitled to First Amendment protection.

### III

After the jury returned a verdict against Geil for $22,000, the district court granted Geil's motion for j.n.o.v., concluding that "Ware failed to establish by a preponderance of the evidence that her activity in relation to the bond issue was a substantial or motivating factor in Geil's decision to recommend termination." Rec., vol. I, doc. 64, at 10. In so doing, the court characterized Ware's evidence as "subjective evaluations." *Id.* at 8. Ware asserts that the district court erred by reweighing the evidence, by assessing the credibility of the

witnesses, and by failing to view the evidence in the light most favorable to her. Based on our review of the record, we conclude that the district court clearly substituted its judgment for that of the jury.

"Jury verdicts are not to be lightly overturned as courts recognize that a 'traditional sanctity' attaches to the solemn verdict of a jury." *Paz v. Carman Indus.*, 860 F.2d 977, 979 (10th Cir.1988) (quoting *Mid-West Underground Storage Inc. v. Porter*, 717 F.2d 498, 501 (10th Cir.1983)). " 'Judgment n.o.v. is proper only when the evidence so strongly supports an issue that reasonable minds could not differ.' " *Ryder v. City of Topeka*, 814 F.2d 1412, 1418 (10th Cir.1987) (quoting *Delano v. Kitch*, 663 F.2d 990, 1002 (10th Cir.1981). "In making this evaluation, the court must construe the evidence and inferences most favorably to the nonmoving party." *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1171 (10th Cir.1985). The court " 'cannot weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury.' " *Id.* (quoting *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 680 n. 2 (10th Cir.1981)).

■ Evidence on the motivating factor issue may be sufficient to support a jury verdict even though it is circumstantial. *See Conklin v. Lovely*, 834 F.2d 543, 546–47 (6th Cir.1987); *Lindsey v. Board of Regents*, 607 F.2d 672, 675 (5th Cir.1979). A plaintiff may create a reasonable inference of improper motivation by presenting evidence tending to show that the reasons proffered for the adverse action are without factual support. *See McClure v. Cywinski*, 686 F.2d 541, 546 (7th Cir.1982) (quoting *Fluker v. Alabama State Board of Regents*, 441 F.2d 201, 209 (5th Cir. 1971)); *Love v. Sessions*, 568 F.2d 357, 360–61 (5th Cir.1978); *Simineo v. School Dist. No. 16*, 594 F.2d 1353, 1357 (10th Cir.1979). A j.n.o.v. is proper, however, if the verdict is supported only by sheer speculation and conjecture. *See McClure*, 686 F.2d at 546.

■ Although Geil testified that his decision was based in part on a personality conflict with Ware that resulted in a deteriorating office environment, Ware presented evidence through Marguerite Banks that the office environment was friendly and that the relationship between Ware and Geil remained harmonious. Ware also presented evidence that she and her husband maintained a social and neighborly relationship with Geil and his family, and with the principal, Mr. Wheeler, and his wife.

Geil also stated that one of the reasons for his decision was his belief that Ware was losing interest in the job. The only basis for this belief was his observation that Ware had nearly stopped attending extracurricular school events such as football games. Ware testified that although she had faithfully attended numerous functions while her children were in school, she had cut back when her youngest graduated, and that this reduction had nothing to do with loss of interest in her job.

Geil testified that Ware resented change, although the only concrete example offered as evidence of this was his perception of her resistance to computerizing the bookkeeping in 1972–73. Two witnesses who had worked with Ware and Geil in setting up the computerization testified that Ware never indicated she disliked computers, that she had a very positive attitude, that she was willing to cooperate, and that her work was not only excellent, but far superior to that of secretaries in other school systems in which they had worked.[2]

Ware also presented evidence demonstrating the high quality of her job performance. She had received raises every year, including the year before her termination. She had never been criticized or reprimanded by Geil, and those in the best position to evaluate the quality of her work described it as excellent. In 1974, two years after the bookkeeping was computerized, a previous employer sought to interview Ware. Geil and the school board requested her to stay in their employment and gave her a raise.

---

2. Geil's assertion that he had noticed alcohol on Ware's breath was totally uncorroborated.

Finally, we note evidence of statements by Geil indicating that he was not pleased with Ware's stance on the bond issue. Although disputed by Geil, Ware testified that he instructed her to stop contacting people about the matter. Geil admitted that one of the reasons for his decision to terminate her was his belief that she would have difficulty working on the bond issue after she had opposed it. Geil and the school board president discussed Ware's opposition and both stated that they "hated to see it." Rec. supp. vol. I, at 150. This testimony, coupled with the evidence that Geil's reasons for terminating Ware were pretextual, that her work was satisfactory and that, after working nine years as Geil's secretary without any indication that he was not pleased with her work, she was fired two weeks after the bond election, permitted the jury to infer that Geil was motivated by Ware's protected speech. *See e.g., Conklin,* 834 F.2d at 546–47 (j.n.o.v. not proper given evidence of exemplary work record, lack of criticism or reprimands, and statements implying improper motive); *Solis v. Rio Grande City Ind. Schools,* 734 F.2d 243, 247 (5th Cir.1984) (denial of j.n.o.v. affirmed on evidence that plaintiff's protected speech open and well known, and plaintiff qualified and replaced by one with less experience); *Crawford v. Garnier,* 719 F.2d 1317, 1323 (7th Cir.1983) (jury verdict for plaintiff supported by evidence of proximity of termination and defendant's awareness of protected speech, and fact that defendant discussed speech with colleague shortly before termination).

The district court erroneously concluded that Ware's evidence was insufficient as a matter of law because it was subjective. A case such as this one, which may properly be proven by circumstantial evidence and reasonable inferences, will necessarily involve subjective elements. The evidence presented by both sides consisted largely of subjective evaluations of body language, tone of voice, facial expressions, the nature of the office atmosphere, and other inferences drawn from non-verbal conduct. In addition, the testimony as to the content of the critical conversations between Ware and Geil was directly conflicting. The weight given such subjective and contradictory evidence necessarily depends on an evaluation of the credibility of the witnesses,[3] a function exclusively within the province of the jury. Accordingly, we reverse the grant of j.n.o.v. in favor of Geil.

IV

Ware contends that the district court erred in granting a directed verdict for the school board because she presented sufficient evidence to impose liability on the board for Geil's illegal conduct. In granting the board's motion, the court stated:

"The undisputed evidence convincingly demonstrates that the bond issue played no part whatsoever in the Board's decision to terminate Ware. The bond issue was not raised at the board meeting and the board members testified that the issue was not considered by them. Ware presented no evidence to the contrary."

Rec. vol. I. doc. 64, at 11. We cannot agree with this assessment of the record. Moreover, during the pendency of this appeal, the Supreme Court decided two cases that shed light on the board's liability for the acts of Geil, its employee. *See City of Canton v. Harris,* —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Our review of the record in light of these cases convinces us that the district court's grant of a directed verdict must be reversed.

Liability under section 1983 cannot rest upon the doctrine of *respondeat superior.* *See City of Canton,* 109 S.Ct. at 1203. A direct causal link must exist between the acts of the governing body sought to be held liable and the alleged constitutional deprivation. *Id.* Such a

---

**3.** We note that Geil's credibility was impeached twice. Geil testified that after the board meeting, Ware came back to school with a smile on her face and cleaned out her desk. Ware and Banks both testified that Ware never returned to school after the meeting, and that Banks cleaned out Ware's desk and brought Ware's things to her home. Ware also presented evidence that Geil at one time had misled the board about his teacher recruiting activities.

causal connection may be established when the governing body has delegated its decision-making authority to the official whose illegal conduct caused the harm, *see Pembaur,* 475 U.S. at 485, 106 S.Ct. at 1301, or when the governing body retains its decision-making authority but exercises it with deliberate indifference to the constitutional rights of those affected by its decisions, *see City of Canton,* 109 S.Ct. at 1204–06; *Smith v. Rowe,* 761 F.2d 360, 368–69 (7th Cir.1985). Ware contends that she presented sufficient evidence under both of these theories to raise a jury issue on the school board's liability.

■ Ware's argument that the board delegated to Geil its authority to terminate Ware is supported by the undisputed fact that Geil changed the locks to Ware's office, thus locking her out, the day after he told her he was going to recommend her nonrenewal and five days *before* the school board meeting at which his recommendation was presented. This fact permits an inference that Geil considered his decision to be final. The dissent relies on the board's 4 to 3 decision as apparently conclusive evidence that the board did not rubber stamp Geil's decision. However, there is evidence that at least a majority of the board may have done just that. The school board president testified that during the board's executive session on April 8, the board discussed the fact that it was Geil's privilege to nonrenew his secretary and get another one. Rec., supp. vol. I, at 132–33. Another board member testified that when Geil began his job as superintendent, "it was the understanding between him and the Board that he could choose his immediate secretary." *Id.* at 213. This evidence is clearly sufficient to permit the jury to conclude that the board had effectively delegated its power to terminate Ware to Geil. *Accord Starrett v. Wadley,* 876 F.2d 808, 819 (10th Cir.1989) (county liable when it admitted vesting employee with authority to fire his staff).

■ We also find evidence in the record to support Ware's claim that even if the board retained its decision-making power, it acted with deliberate indifference to Ware's First Amendment rights in approving her termination. School boards are chargeable with the knowledge that employees "may not be dismissed in retaliation for lawful exercise of first amendment freedoms." *Greminger v. Seaborne,* 584 F.2d 275, 279 n. 4 (8th Cir.1978). The record contains evidence that the board members knew about Ware's public stand on the bond issue and were informed of her belief that her termination was in retaliation for that stand. One member, Dale Remsburg, testified that he believed the bond issue was the cause and that another member told him he thought so as well. The board meeting itself was attended by an unusually large number of patrons and was apparently disorderly. Some evidence indicates that the bond issue and Ware's termination were raised from the floor. Significantly, Remsburg testified that at the executive session he raised the possibility that Geil's recommendation was tied to the bond issue and that Geil's proffered reasons were not valid. Rec., supp. vol. III, at 34. Moreover, the school board president testified that he was concerned prior to the board meeting about Ware's speech. He stated that "my main concern was that here you've got an employee of your District, and if they're out saying you don't need this here bond issue, that was my main concern, that it just wouldn't look as good." Rec., supp. vol. I, at 151. Notwithstanding the above indications that Geil's recommendation was in retaliation for Ware's position on the bond issue, the board made no independent investigation, asked Geil no questions about the reasons for his decision, and asked Ware only one question, the answer to which it did not take into consideration. This evidence is sufficient to create a jury question on whether the board acted with deliberate indifference to Ware's First Amendment rights in approving Geil's recommendation. We therefore reverse the grant of a directed verdict in favor of the school board.

V

■ In concluding that this case must be reversed, we agree with the dissent that

the trial court correctly articulated the standards governing the assessment of motions for directed verdict and for j.n.o.v. It is not the articulation but the application of those standards with which we take issue. Although a scintilla of evidence is not sufficient to justify submitting a case to the jury, a verdict may not be directed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he inquiry performed is the threshold one of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. The dissent has simply disregarded the evidence set out above upon which a reasonable jury could find in favor of Ware's claims.

"[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial." *Id.* at 249, 106 S.Ct. at 25. The lower court here went beyond its proper function of determining whether the evidence presented a reasonable conflict and performed the jury function of weighing that conflicting evidence, as demonstrated by its statement that "Ware failed to establish [her claim against Geil] *by a preponderance of the evidence.*" Rec., vol. I, doc. 64, at 10 (emphasis added). The dissent tacitly recognizes this error by repeatedly calling for affirmance of the district court's "findings/conclusions," a hybrid term that appears to refer to a resolution of the merits of a claim by the bench rather than the jury.

▮ In sum, we conclude that Ware's speech on the school bond issue was entitled to First Amendment protection. We hold that the district court erred in enter-

ing a j.n.o.v. in favor of Geil, and we reverse and remand with instructions to reinstate the jury verdict against him. We also hold that the court erred in granting a directed verdict for the school board, and we reverse and remand for further proceedings.[4]

REVERSED AND REMANDED.

BARRETT, Senior Circuit Judge, dissenting:

I would affirm the district court. In my view, the trial court was correct in granting the school district's motion for a directed verdict and in granting Superintendent Geil's motion for judgment notwithstanding the verdict. This is a case where this court has substituted its outcome-oriented objectives for the district court's considered findings/conclusions.

### I.

The district court was fully aware of the rigid standards governing the grant of a judgment n.o.v., i.e., that the court cannot reweigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *See,* Opinion and Order of December 20, 1985, pp. 2–3. When the trial court denied Geil's motion for a directed verdict, it observed that the evidence favoring Ware was "razor thin." Thereafter, the trial court concluded that the overwhelming weight of the evidence supported Geil's contention that the school board terminated Ware for legitimate reasons which had no relationship to the bond issue. There was no inconsistency on the trial court's part in denying the motion for directed verdict made by defendant Geil even though the court thereafter, based on the same evidence, granted Geil's motion for judgment notwithstanding the verdict. In Wright and Miller, Federal Practice and Procedure: Civil § 2533, p. 586, it is observed:

---

**4.** Ware contends that the district court erred in its jury instructions by refusing to allow her to recover lost wages allegedly accruing after the time of trial. In view of the speculative nature of these wages, and the fact that the jury award-

ed Ware an amount less than the figure she offered as lost wages up to the date of trial, we conclude that the court's instruction was not prejudicial error.

Even at the close of all the evidence it may be desirable to refrain from directing a verdict though it would be possible to do so. If a verdict is directed and the appellate court holds that the evidence was in fact sufficient to go to the jury, an entire new trial must be had. If, on the other hand, the trial court submits the case to the jury, though it thinks the evidence insufficient, final determination of the case is greatly expedited. If the jury agrees with the court's appraisal of the evidence, and returns a verdict for the party who moved for a directed verdict, the case is at an end. If the jury brings in a different verdict, the trial court can grant judgment notwithstanding the verdict. Then if the appellate court holds that the the trial court was in error in its appraisal of the evidence, it can reverse and order judgment on the verdict of the jury, without any need for a new trial. For this reason the appellate courts have repeatedly said that it is usually desirable to take a verdict, and then pass on the sufficiency of the evidence on a post-verdict motion. (footnote omitted).

The record simply does not support the proposition that the school board members terminated Ware in order to punish her for her opposition to the bond issue. The district court observed, and I agree, that "[t]he overwhelming weight of the evidence supports ... [the] ... interpretation that Geil's recommendation was prompted entirely by permissible concerns. Geil, Banks and even Ware testified to conflict in Geil's and Ware's relationship predating the bond issue." Opinion and Order of December 20, 1985, at p. 9. The court pointed to Geil's testimony that Ware "resisted typing, taking directions," etc. *Id.* at 4. Significantly, the court pointed out that Marguerite Banks, who worked both with Geil and Ware, as well as Neil Wheeler, the school principal (who was called as an adverse witness by Ware) confirmed and corroborated Geil's testimony that the working relationship between Geil and Ware had worsened long before the bond issue developed. *Id.* Thus, in my view, the district court properly concluded that

Ware failed to establish by a preponderance of the evidence that her activity in relation to the bond issue was a substantial or motivating factor in Geil's recommendation that she be terminated. The district court found/concluded:

Ware and her attorney, O.J. Connell, were present at the board meeting on April 8, 1980. Board members testified that the reasons Geil presented to the Board for his recommendation that Ware be terminated included the strained work atmosphere and Ware's resistance to Geil's policy decision. [Specifically, resistance to typing and installation of the mini computers]. Although Ware was given an opportunity to respond, the bond issue was not mentioned by anyone. Board members asked Ware and Geil whether they thought they could work together in the future. Ware responded with a qualified "yes;" Geil answered "no." The Board voted 4–3 to accept Geil's recommendation that Ware be discharged. All of the board members who voted to terminate Ware testified at trial that the bond issue did not enter into their decision.

*Id.* at 6–7.

I agree with the district court's finding that on the record made, the jurors could not have reasonably inferred that Ware's opposition to the bond issue was a substantial or motivating factor in either Geil's recommendation for termination or the board's 4–3 vote in support thereof. One of the board members who voted to retain Ware was Dale Remsburg. At trial, Remsburg testified that he recalled board member Patton mentioning the bond issue as the reason for Ware's termination. However, Mr. Patton testified that he had no recollection of having made any such remarks to Remsburg. (R., Vol. IV, pp. 155–56). Other than Ware's own self-serving testimony, Remsburg's "recollection" is the only evidence connecting the bond issue matter to Ware's termination. It is less than "razor thin!" Undaunted, the majority has found "evidence" to support Ware's "claim that even if the board retained its decision-making power, it acted with *delib-*

*erate indifference* to Ware's First Amendment rights in approving her termination." (Majority Opinion, p. 913) (italizing supplied).

The revised majority opinion, in accord with my previous revised dissent, properly relies on *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) for the standard governing the grant of motions for directed verdict and j.n.o.v. The majority thus recognizes that if the party bearing the burden of proof has presented only a *scintilla* of evidence (as did plaintiff Ware) in contrast to the compelling evidence presented by the defendants (see district court's findings/conclusions, Opinion and Order of December 20, 1985, at pp. 4, 6–7, 9), there would not be any evidence "[u]pon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251, 106 S.Ct. at 2511. On the other hand, the trial judge must direct a verdict if there can be but one reasonable conclusion as to the verdict. A directed verdict is "[a]ppropriate only if the proof weighs so overwhelmingly in favor of the movant as to permit no other rational conclusion." *Koch v. City of Hutchinson,* 814 F.2d 1489, 1495 (10th Cir. 1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). The trial court applied this standard. *See,* Opinion and Order of December 20, 1985, p. 9 (the "overwhelming weight of the evidence supports. . . .").

Plaintiff Ware was legally obligated to prove that her protected speech (opposition to the bond issue) was the substantial or motivating factor for Geil's recommendation that she be terminated or that Geil's proffered explanations for her termination were pretextual. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Franklin v. Atkins,* 562 F.2d 1188, 1190 (10th Cir. 1977). *See also EEOC v. Prudential Federal Savings and Loan Association,* 763 F.2d 1166 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985).

She plainly failed to make the grade. The district court was on solid ground in finding/concluding that plaintiff Ware failed to carry her burden of persuasion.

## II.

The majority opinion is in absolute contradiction to the district court's findings/conclusions relative to the district court's grant of the school board's motion for a directed verdict.

The district court, in granting the school board's motion for directed verdict found/concluded:

The undisputed evidence convincingly demonstrates that the bond issue played no part whatsoever in the Board's decision to terminate Ware. The bond issue was not raised at the board meeting and the board members testified that the issue was not considered by them. Ware presented no testimony to the contrary.

(R., Vol. I, Doc. 64, p. 11).

The majority disagrees with this "assessment of the record" because (1) Geil's action in locking Ware out of her office the day after he told her that he was going to recommend her termination shows that the Board delegated to Geil the ultimate authority in the matter, and (2) there is evidence to support Ware's claim that even if the board had retained its decision-making power, it acted with deliberate indifference to Ware's First Amendment rights in approving her termination. Both of these "findings" by the majority are based on rank assumptions, speculations and "indications."

The very vote on the issue of whether to accept Geil's recommendation that Ware's contract be terminated, 4–3, speaks louder than words that the board did not "rubber stamp" or routinely approve Geil's recommendations. Furthermore, the majority apparently discounts the testimony of all of the board members that they retained the power and authority to hire and fire employees of the school district. This evidence was not disputed.

I would affirm the district court.