John CLAY, Plaintiff,

v.

The BOARD OF TRUSTEES OF NEO-
SHO COUNTY COMMUNITY COL-
LEGE, and Travis P. Kirkland, Defen-
dants.

Civ. A. No. 94–2282–EEO.

United States District Court,
D. Kansas.

Oct. 13, 1995.

Gail M. Hudek, Paul F. Pautler, Jr., Hudek & Associates, P.C., Kansas City, MO, for plaintiff.

James R. Goheen, Daniel B. Denk, Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for defendants.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on defendants' motion for summary judgment (Doc. # 61). For the reasons set forth below, defendants' motion for summary judgment will be granted in part and denied in part.

### Factual Background

Plaintiff filed the instant suit against the Board of Trustees of his former employer, Neosho County Community College ("NCCC"), and Travis Kirkland, NCCC Athletic Director, alleging breach of his employment contract; retaliatory discharge prohibited by Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.;* a claim under 42 U.S.C. § 1983 for violation of

plaintiff's First Amendment Rights; and wrongful discharge in violation of Kansas public policy.[1]

Defendants now move for summary judgment on all of plaintiff's claims. For purposes of the instant summary judgment motion, the following is an abbreviated version of the pertinent facts, which are either uncontroverted or deemed admitted, pursuant to Federal Rule of Civil Procedure 56(c) and District of Kansas Rule 206(c).

On November 16, 1990, plaintiff was hired as Women's Basketball Coach and Wellness Program Director for NCCC for the remainder of the 1990–91 school year. Plaintiff remained employed in both capacities until March 1, 1993, when Dr. Kirkland informed plaintiff that he would recommend that the Board not renew plaintiff's contract for the 1993–94 school year and relieved plaintiff of all responsibilities related to both positions. Plaintiff was paid through June 17, 1993.

Plaintiff was not tenured at any time during his employment by NCCC. NCCC faculty members were eligible for tenure after three years of employment.

Plaintiff's employment contract for 1992–93 provided that plaintiff was "subject to" the NCCC Board Policy Handbook ("the Handbook"). The Handbook set up specific procedures for performance reviews of NCCC "instructional" faculty members.[2] Specifically, the Handbook provided that all third-year faculty would be evaluated at least once per year. The Handbook provided for a discussion of the review between the faculty member and the Dean of Academic Affairs and for a hearing by the evaluation review committee, if requested by the faculty member. It is uncontroverted that formal written reviews, as contemplated in the Handbook, were not conducted on plaintiff, or any other coach, during the 1992–93 school year.

The Handbook also contained the following sections addressing nonrenewal of a faculty member's employment contract:

*Causes for Non-renewal or Termination*

Employment for all probationary employees, part-time employees, temporary employees, or employees with a contract that has a definite ending date may be terminated, demoted, suspended, non-renewed, or not extended without any reason or reasons given for such action. The notice to such persons shall only be required to specify the date of determination....

*Procedure for Non–Renewal*

The Board of Trustees has accepted the following policy as a basis for dealing with instructors whose work is not satisfactory.

1. The instructor has a right to be warned that his/her work is not satisfactory or up to expectations and to have a reasonable probationary period to correct the situation. The warning should deal with specific items and state the consequences if improvement is not forthcoming. Furthermore, the warning should be in writing for the record so that there can be no misquoting or misunderstanding later....

NCCC Board Policy Handbook at p. 4.7, 4.8 (Plaintiff's Exhibit 15 and Defendant's Exhibit 23).

Whether and when plaintiff registered complaints about inequities between the women's and men's sports programs at NCCC is hotly contested by the parties. Plaintiff describes his protected speech as communications with the NCCC President, Title IX Coordinator, and Athletic Directors, "among others, to identify several areas in which he believed the NCCC athletic department had discriminated against female athletes in violation of Title IX."

Part of the conversations plaintiff describes occurred prior to defendant Kirkland's being hired as NCCC Athletic Director. Specifically, plaintiff points to: (1) his interview with the NCCC screening and hiring committee in which he inquired about the apparent inequity between the women's and men's sports programs; (2) a conversa-

---

1. Plaintiff's complaint also contained a claim for intentional infliction of emotional distress. This claim is no longer a part of the case because it was not included in the Pretrial Order, which was entered July 31, 1995.

2. Defendants argue that whether plaintiff was an instructional faculty member is a question of law. For purposes of the instant motion, the court will assume that plaintiff was an instructional faculty member.

tion in late 1990 with the Dean of Student Activities about gender equity issues; (3) a February 1991 NCCC Athletic meeting at which he complained about *inter alia* the unequal distribution of scholarship money and abstained from voting on the scholarship distribution proposal; (4) discussions with Penny Graves and Kay Buerkle, NCCC women's volleyball and softball coaches; (5) a conversation with Eddie Vaughn, NCCC Athletic Director, about inequities in practice schedules and purchase requests; and (6) an April 29, 1992, complaint to NCCC's interim Athletic Director and Title IX Coordinator, about budget issues. Taking plaintiff's version of the facts as true for purposes of summary judgment, the court will assume that plaintiff registered complaints to Dr. Kirkland and others throughout 1992–93 regarding gender inequities related to the women's basketball team at NCCC. Plaintiff's version of these complaints will be discussed in further detail below. It is uncontroverted that plaintiff did not file a formal Title IX complaint with the Department of Education Office of Civil Rights.

*Standards for Summary Judgment*

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–

52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

■ Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

■ "[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan.Rule 206(c).

*Discussion*

*Plaintiff's Title IX Claim*

Defendants seek summary judgment on plaintiff's claim under Title IX because, they contend, Title IX does not provide a private cause of action for retaliation to a "whistle

**1494**

blower" who is not himself discriminated against on the basis of sex. In other words, defendants argue, that plaintiff is outside the class of persons protected by Title IX. Further, they argue, that plaintiff failed to exhaust his administrative remedies. In addition, defendant Kirkland seeks summary judgment because, he asserts, Title IX claims are limited to actions against the educational institution, not an individual administrator. Kirkland also asserts qualified immunity as a defense to plaintiff's Title IX claim.

We first examine the viability of plaintiff's retaliation claim under Title IX. Title IX, 20 U.S.C. § 1681, provides in pertinent part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

The only enforcement mechanism expressly enacted by Congress with regard to Title IX is to empower any agency involved in extending Federal financial assistance to issue rules, regulations, or orders of general applicability. 20 U.S.C. § 1682. Federal agencies are authorized to terminate Federal assistance for noncompliance with any such promulgated rules. *Id.* From this meager beginning, courts have permitted private plaintiffs to bring a claim for damages under Title IX.

In *Cannon v. University of Chicago,* 441 U.S. 677, 717, 99 S.Ct. 1946, 1968, 60 L.Ed.2d 560 (1979), the Court held that, under "certain limited circumstances," Title IX provides a private cause of action for injunctive relief to any person discriminated against on the basis of sex with regard to any educational program or activity which receives Federal financial assistance. *See also Roberts v. Colorado State Board of Agriculture,* 998 F.2d 824, 825 n. 2, 833–34 (10th Cir.1993). In *North Haven Board of Education v. Bell,* 456

U.S. 512, 535–56, 102 S.Ct. 1912, 1925–26, 72 L.Ed.2d 299 (1982), the majority of the Court, over a strong dissent by Justice Powell, held that "Title IX proscribes employment discrimination in federally funded education programs." Subsequently, in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 75–76, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208 (1992), the Court held that a private plaintiff may recover money damages under Title IX, but only for *intentional* discrimination.

■ The question of whether Title IX provides a private cause of action for damages for retaliation against a whistle blower, under circumstances similar to the instant case, has not been decided by the Supreme Court or the Tenth Circuit. Defendant argues that because Title IX does not include the language used in Title VII,[3] prohibiting retaliation, it does not protect against retaliation for Title IX activities. Although this argument has a great deal of appeal, we are constrained by *Bell* and other cases interpreting Title IX, to hold otherwise.

In *Preston v. Commonwealth of Virginia ex rel. New River Community College,* 31 F.3d 203, 205–06 n. 2 (4th Cir.1994), the Fourth Circuit cited 34 C.F.R. § 100.7(e)[4] in recognizing a claim by a female counselor under Title IX for retaliation. *See also Lendo v. Garrett County Board of Education,* 820 F.2d 1365 (4th Cir.1987) (opinion assumes the viability of a damage claim for retaliation under Title IX, but does not discuss the issue). Similarly, in *Murray v. New York University College of Dentistry,* 57 F.3d 243, 248–49 (2d Cir.1995), the Second Circuit implicitly recognized the viability of a claim for retaliation under Title IX by a female student. Recently, in *Clemes v. Del Norte County Unified School District,* 843 F.Supp. 583, 588–90 (N.D.Ca.1994), the court recognized a Title IX retaliation claim for a

---

**3.** Title VII prohibits retaliation against anyone "because he has opposed any practice made an unlawful employment practice by [Title VII] ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a).

**4.** "Congress intended that Title IX be interpreted and enforced in the same manner as Title VI ...

and the Department of Education regulations incorporate by reference into Title IX all procedural provisions applicable to Title VI.... One of these regulations, 34 C.F.R. § 100.7(e) (1993), prohibits retaliation for filing a claim of discrimination." *Preston,* 31 F.3d at 205 n. 6. The court concluded that the regulation was entitled to deference because it was reasonably related to the purpose of Title IX. *Id.*

teacher who had filed formal Title IX complaints alleging discrimination by the school district against females in educational programs.[5]

We tend to agree with the criticisms raised by Justice Powell in his dissenting opinion in *Bell* and have some misgivings about holding that Title IX authorizes, by implication, a private cause of action for retaliation under Title IX under the facts of the instant case. Nonetheless, under the majority opinion in *Bell,* we believe that we must permit plaintiff to proceed with his Title IX retaliation claim. Plaintiff's claim is the natural extension of the Court's holding in *Bell*—if employment discrimination on the basis of sex is covered by Title IX, so, too, should retaliation for speaking out regarding Title IX violations.

In so holding, we are mindful that "if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language." *Bell,* 456 U.S. at 521, 102 S.Ct. at 1918. We are also guided by the Tenth Circuit's holding that Title VII, rather than Title VI, is the most appropriate analogue in defining Title IX's substantive standards. *Roberts v. Colorado State,* 998 F.2d 824, 832–33 (10th Cir.1993); *Mabry v. State Bd. of Community Colleges & Occupational Educ.,* 813 F.2d 311, 316–17 (10th Cir.1987). *See also Lipsett v. University of Puerto Rico,* 864 F.2d 881, 896–97 (1st Cir.1988) (holding that Title VII's substantive standards apply to Title IX sex discrimination claims).

Some of the issues raised in the instant case are prime examples of the difficulties created by implication of a cause of action for employment discrimination in accordance with the majority opinion in *Bell* and other cases extending Title IX beyond its literal statutory bounds. For example, defendants seek summary judgment because plaintiff did not exhaust his administrative remedies. Ordinarily, an employment discrimination plaintiff's failure to exhaust administrative remedies under Title VII mandates entry of summary judgment for the defendant. *Bolden v. PRC, Inc.,* 43 F.3d 545, 552–53 (10th Cir. 1994) (citing 42 U.S.C. § 2000e–5). However, Title IX apparently does not contain a

similar requirement. In *Cannon,* 441 U.S. at 706–08 n. 41, 99 S.Ct. at 1962 n. 41 (a Title IX case outside the employment context), the court held that Title IX does not require exhaustion of administrative remedies prior to the bringing of a private suit.

■ The Board here argues that, at a minimum, if an employment retaliation claim is to be permitted under Title IX based on the retaliation provision of Title VII, Title VII's procedural aspects with regard to administrative remedies should be required to be followed as well. Indeed this is a compelling argument. However, Justice Powell raised the same concern in his dissent in *Bell,* 456 U.S. at 552–53 n. 14, 16, 102 S.Ct. at 1934 n. 14, 16 (discussing that implication of a claim for employment discrimination under Title IX would create two sets of federal regulations governing the employment practices of federally funded educational institutions, each involving very different agency procedures for review). Yet, without altering this result in any way, the *Bell* majority held that an employment discrimination claim may be maintained under Title IX. Although we sympathize with the Board's argument, we are influenced by *Bell* and *Cannon* to hold that exhaustion of administrative remedies is not required under Title IX.

In sum, we hold that plaintiff may maintain a Title IX claim for retaliation. The other challenges raised by the Board to plaintiff's Title IX claim rest on factual matters not resolvable on summary judgment. Accordingly, the Board's motion for summary judgment on plaintiff's Title IX claim will be denied.

■ However, defendant Kirkland's motion for summary judgment on plaintiff's Title IX claim will be granted. Title IX actions may only be brought against an educational institution, not an individual acting as an administrator or employee for the institution. *See Doe v. Petaluma,* 830 F.Supp. 1560, 1576–77 (N.D.Cal.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st

**5.** *Clemes* also involved claims under Title VI for discrimination against minorities and Native

Americans. 843 F.Supp. at 586–87.

Cir.1988); *Bowers v. Baylor Univ.*, 862 F.Supp. 142, 145–46 (W.D.Tex.1994); *Bougher v. University of Pittsburgh*, 713 F.Supp. 139, 143 (W.D.Pa.1989), *aff'd*, 882 F.2d 74 (3d Cir.1989).

Without citation to any case in support, plaintiff argues that because 34 C.F.R. § 100.7(e) prohibits any "recipient [of Federal funds] *or other person*" from intimidating, threatening, coercing, or discriminating against any individual for the purpose of interfering with any right or privilege, Title IX is not limited to actions against the institution itself. We are more persuaded by the analysis of the issue in *Doe, Lipsett,* and *Bowers,* and decline to read section 100.7(e) as authorizing a Title IX claim against an individual.

 Further, even if a Title IX action provided a viable claim against an individual, defendant Kirkland is entitled to qualified immunity with respect to plaintiff's Title IX claim. Much has been written about the doctrine of qualified immunity which insulates government officials from liability when performing official duties. *See, e.g., Horwitz v. State Bd. of Medical Examiners,* 822 F.2d 1508, 1512 (10th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987); *Allen v. Board of Comm'rs of Wyandotte,* 773 F.Supp. 1442, 1451 (D.Kan.1991). To summarize, public officials enjoy qualified immunity from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Pleasant v. Lovell,* 876 F.2d 787, 794 (10th Cir.1989).

 A claim of qualified immunity is analyzed as follows: Once a claim of qualified immunity is adequately raised by a defendant, the plaintiff must "show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law." *Woodward v. City of Worland,* 977 F.2d 1392, 1396–97 (10th Cir.1992). If plaintiff meets this burden, defendant then assumes "the normal summary judgment burden of establishing that no material facts that would defeat his claim of qualified immunity remain in dispute." *Id.*

 A claim of qualified immunity presents a question of law, which cannot be avoided simply by "framing it as a factual issue." *Dixon v. Richer,* 922 F.2d 1456, 1460 (10th Cir.1991); *Workman v. Jordan,* 958 F.2d 332, 336 (10th Cir.1992). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992). In deciding whether the law was clearly established, we look only to cases decided prior to the alleged violation of plaintiff's rights. *Stewart v. Donges,* 915 F.2d 572, 581 (10th Cir.1990).

After a careful analysis of all relevant precedent in the Title IX area, the court determines that the law was not clearly established in 1993 that Title IX provides a private cause of action for damages for whistle blower retaliation related to complaints by a coach about the institution's Title IX compliance. There is no Supreme Court or Tenth Circuit authority on point and the court is not convinced that the sparse case law on the subject constitutes an "established weight of authority" in support of plaintiff's position.

Plaintiff relies primarily on *Cannon, Preston,* and *Murray* to establish the weight of authority in his favor. However, none of those cases carry the day for plaintiff because they were all decided well *after* the allegedly retaliatory acts by Kirkland in the instant case. Even assuming that these cases represent sufficient precedent to support a finding that there a clearly established weight of authority from other courts supports plaintiff's position, it certainly was not so in 1993, when defendants made the decision not to renew plaintiff's employment contract.

In short, plaintiff has failed to meet his burden of establishing that the law was clearly established at the time of the alleged violations. Accordingly, Kirkland is, as a matter of law, entitled to qualified immunity on plaintiff's Title IX claims for retaliatory

discharge. Defendant Kirkland's motion for summary judgment on plaintiff's Title IX claim will be granted.

### Plaintiff's 42 U.S.C. § 1983 Claim

Defendants seek summary judgment on plaintiff's section 1983 claims for First Amendment violations on several grounds. First, they argue that plaintiff's Title IX complaints were not a matter of public concern and that the *Pickering* balancing test tilts in their favor. Second, defendants contend that plaintiff has failed to establish any causal nexus between an unconstitutional act by the Board and the nonrenewal of his contract. In addition, Kirkland raises qualified immunity as a defense to plaintiff's section 1983 claim.

"A public employer may not condition employment or its incidents upon an employee's relinquishment of his or her First Amendment rights." *Woodward v. City of Worland*, 977 F.2d 1392, 1402 (10th Cir.1992). To maintain a section 1983 claim for violation of his First Amendment rights, plaintiff must show: (1) that his speech touched a matter of public concern; (2) that his interest in making the statements outweighed defendants' interest "in promoting the efficiency of the public services it performs through its employees;" and (3) that plaintiff's speech was a motivating factor in the Board's decision to nonrenew plaintiff's employment contract. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Patrick v. Miller*, 953 F.2d 1240, 1246 (10th Cir.1992).

If plaintiff meets his burden by establishing a prima facie case, defendants may only prevail by showing, by a preponderance of the evidence, that the Board would have nonrenewed plaintiff's employment contract regardless of the allegedly protected speech. *Mount Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Schalk v. Gallemore*, 906 F.2d 491, 497 (10th Cir.1990).

Our analysis of plaintiff's First Amendment claim begins with a determination, as a matter of law, of whether plaintiff's speech involved a matter of public concern. *Patrick v. Miller*, 953 F.2d at 1246. We look to the "content, form and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690–91. "Speech pertaining to a governmental agency's 'discharg[e] [of] its governmental responsibilities' ordinarily will be regarded as speech on a matter of public concern, while speech pertaining to internal personnel disputes and working conditions ordinarily will not be so regarded." *Woodward*, 977 F.2d at 1403 (quoting *Connick*, 461 U.S. at 148, 103 S.Ct. at 1690–91). However, "even speech that focuses on internal employment conditions and is made in the context of a personal dispute may be regarded as pertaining to a matter of public concern if it addresses important constitutional rights which society at large has an interest in protecting." *Id.* at 1404.

The Tenth Circuit's en banc opinion in *Koch v. City of Hutchinson*, 847 F.2d 1436 (10th Cir.1988), contains a lengthy analysis of whether a fire marshal's report as to the cause of a fire was a matter of public concern. The majority concluded that it was not, noting that the public concern inquiry is not guided by "what is of general interest to the public." *Id.* at 1445. The court looked to whether the speech at issue was "motivated or inspired by ... alleged improprieties [in investigative techniques within the department] or by the desire to expose those improprieties." *Id.* at 1448.

The matter of public concern determination requires specific and particular examination of the speech plaintiff claims was protected. In this case, the critical speech includes any Title IX complaints made by plaintiff after Kirkland's arrival at NCCC in the summer of 1992.[6] Plaintiff alleges that he had at least four separate meetings with Dr. Kirkland at which he raised Title IX

---

**6.** Plaintiff has not established any causal nexus between his earlier complaints and an adverse employment decision. The record shows that plaintiff was hired despite his questions during the interview process and that he received favorable performance reviews during 1991 and 1992.

Plaintiff has not presented any evidence that the Board voted to nonrenew his contract based on any complaints prior to the 1992–93 school year. Rather, it is uncontroverted that the Board voted to nonrenew based on Kirkland's recommendation.

complaints. He claims that he pointed out inequities between the men's and women's programs in the following areas: distribution of scholarship money, assistant coaches, uniform budgets, purchase requests, travel, and scheduling.

Defendant argues that plaintiff's "complaints" did not rise to the level of a matter of public concern about Title IX violations, but were simply plaintiff's grievances about his own employment situation. We disagree.

Unlike the plaintiff in *Connick*, the Title IX compliance issues raised by plaintiff here go beyond grievances about plaintiff's own employment situation and touch upon matters of public concern. Looking to the content, form, and context factors set forth in *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690–91, we believe they reach beyond matters related only to plaintiff's employment situation and touch upon matters of general public concern, i.e., discrimination against women by a public educational institution.

As to context, defendants argue that because plaintiff's complaints were made privately in response to questions by Kirkland about plaintiff's performance as a coach, they evidence only a personal employment grievance. We are not so persuaded. Significantly, plaintiff alleges that he had been making Title IX compliance inquiries since before he was hired. This weighs against defendants' suggestion that plaintiff only raised Title IX issues in response to poor performance appraisals by Kirkland.

Generally, the private nature of plaintiff's complaints would mitigate against a finding that plaintiff's speech involved matters of public concern. However, in *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 413, 99 S.Ct. 693, 695, 58 L.Ed.2d 619 (1979), the Court held that private communications are no less entitled to First Amendment protection than public expressions if they entail protectible speech.

Under all of the circumstances presented here, although plaintiff's alleged Title IX complaints related to his employment situation in that he was a coach for women's sports, we believe that his allegations that NCCC was not in compliance with Title IX raised a matter of public concern. In short,

discrimination against women by a community college in its sports programming is a matter of public interest. *See, e.g., Hall v. Ford*, 856 F.2d 255, 259–60 (D.C.Cir.1988) (athletic director raised matters of public concern when he questioned the university's compliance with NCAA regulations); *O'Connor v. Peru State College*, 605 F.Supp. 753, 763 (D.Neb.1985) (unequal treatment of women athletes and women's athletic programs was a matter of public concern). *See also Patrick v. Miller*, 953 F.2d at 1246–47 (statements in opposition to alleged discriminatory employment practices are speech on a matter of public concern).

We next balance the plaintiff's interest in making the statements at issue against the interest of NCCC in the "effective functioning of [its] enterprise." *Koch v. City of Hutchinson*, 847 F.2d at 1449. "In performing the balancing, the statement[s] will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Id.* (citations omitted). We note that "an employee's First Amendment interest is entitled to greater weight where he is acting as a whistle blower" in exposing government wrongdoing. *Conaway v. Smith*, 853 F.2d at 797; *see also Hullman v. Board of Trustees of Pratt Community College*, 725 F.Supp. 1536, 1546 (D.Kan.1989).

After careful consideration of the record as a whole, we conclude that plaintiff's First Amendment interest outweighs the administrative interests as asserted by the Board. There is no evidence that plaintiff's comments impaired discipline by his superiors or harmony among his co-workers. *See Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). Nor is there evidence that plaintiff's comments had a "detrimental impact on close working relationships for which personal loyalty and confidence [were] necessary," or that they interfered with the regular operation of the college. *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 594 (10th Cir.1994).

All of the statements by plaintiff after Kirkland arrived in the summer of 1992 were made privately. Plaintiff did not raise his

concerns in a public forum in open defiance of the NCCC administration. *See Conaway,* 853 F.2d at 798 ("relatively low key context" in which complaints were raised favored employee under *Pickering* balancing test).

Unlike the athletic director in *Hall v. Ford,* 856 F.2d 255, 259–60 (D.C.Cir.1988), there is no evidence that plaintiff's complaints threatened his job performance or his ability to carry out the college's goals. We disagree with defendants' assertion that plaintiff's Title IX complaints "demonstrate his incompetence as a head basketball coach." Although defendants raise factual questions about plaintiff's overall performance, they have not presented any evidence that plaintiff's Title IX complaints adversely affected the efficient operation of NCCC in either of the areas in which plaintiff was employed, i.e., the wellness program and the women's basketball program.

█ Two factual inquiries remain in the section 1983 First Amendment analysis: (1) whether plaintiff's nonrenewal was substantially motivated by his protected speech and (2) whether the Board would have taken the same action absent the plaintiff's protected speech. *See, e.g., Hall v. Ford,* 856 F.2d at 258–59; *McEvoy v. Shoemaker,* 882 F.2d 463, 465 (10th Cir.1989); *Hullman,* 725 F.Supp. at 1543–45. Factual disputes on each of these inquiries preclude summary judgment on plaintiff's section 1983 claim.

As to the causation issue, we reject defendants' argument that because it is uncontroverted that the Board members did not know about plaintiff's Title IX complaints, plaintiff's claim fails on the element of causation. The uncontroverted affidavits of the Board members state that they did not have any knowledge of plaintiff's Title IX complaints and did not base their decision not to renew plaintiff's contract on any such protected speech. However, the affidavits also uniformly state that the Board's decision not to renew was based on Kirkland's recommendation. Thus, the Board's decision could have been substantially motivated by impermissible purposes if Kirkland's recommendation was the result of plaintiff's Title IX complaints.

The Tenth Circuit has addressed similar issues in *Saye v. St. Vrain Valley School District,* 785 F.2d 862 (10th Cir.1986) (permitting a claim against the school district where the school board relied on the allegedly improperly motivated recommendation of an administrator in voting not to renew a teacher's contract), and *Ware v. Unified School District No. 492,* 881 F.2d 906 (10th Cir.1989) (holding that the plaintiff could impose liability of the school board where the board made no independent investigation and accepted a recommendation of an administrator which was allegedly motivated by a desire to retaliate). *See also United States v. P.H.E., Inc.,* 965 F.2d 848, 858 (10th Cir. 1992) ("In cases awarding damages to teachers dismissed for exercising their First Amendment rights, we have rejected the notion that referral to an independent board automatically cures the decision-making process of any improprieties."). *But see, Jantz v. Muci,* 976 F.2d 623 (10th Cir.1992) (holding that section 1983 liability could not attach to an administrator in his official capacity unless he had been vested with final policymaking authority). Based on *Saye* and *Ware,* we conclude that plaintiff should be allowed to proceed with his section 1983 claims against the Board and Kirkland in his official capacity because factual issues remain about whether Kirkland's recommendation was impermissibly motivated by plaintiff's Title IX complaints.

█ Finally, we conclude that defendant Kirkland is not entitled to qualified immunity on plaintiff's section 1983 claim against him in his individual capacity. In short, the law at the time of the alleged constitutional violations was clearly established that it was unlawful to retaliate against an employee for exercise of First Amendment rights. "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987) (holding that a probationary employee who could have been discharged for "any reason or for no reason at all, ... may nonetheless be entitled to reinstatement if she was discharged for exercising her constitutional right to freedom of expression." Under plaintiff's version of the facts, we cannot say that it was objective-

ly reasonable for defendant Kirkland to retaliate against plaintiff's protected speech about Title IX violations by recommending nonrenewal of plaintiff's contract. Accordingly, defendant Kirkland's motion for summary judgment on plaintiff's section 1983 claim against him in his individual capacity will be denied.

### Breach of Contract

█ Relying on *Burk v. Unified School Dist.*, 646 F.Supp. 1557 (D.Kan.1986), the Board seeks summary judgment on plaintiff's state law breach of contract claim. In *Burk*, 646 F.Supp. at 1564, the court held that a nontenured high school principal could not rely on statutory requirements in the Evaluation of Certificated Personnel Act, Kan.Stat. Ann. § 72–9001 et seq. (the "Evaluation Act"), to establish a property interest in continued employment sufficient to establish a claim under 42 U.S.C. § 1983. The court held that the Board's policy requiring that an employee be given an opportunity to improve, which was adopted by the Board pursuant to the Evaluation Act, did not create a contractual right in continued employment. *Id.* at 1564–65.

Plaintiff seeks to distinguish *Burk* on the ground that plaintiff's employment contract in the instant case expressly incorporated NCCC Board policies as material terms. In addition, plaintiff does not raise a section 1983 procedural due process claim in the instant case. Plaintiff's claim is simply that the Board breached his employment contract by failing to honor the nonrenewal procedures expressly incorporated into his 1992–93 employment contract.

Although not altogether clear from plaintiff's briefs, it appears that plaintiff is arguing that, unlike Burk's claim of breach of an implied contract, plaintiff's breach of contract claim is viable, because plaintiff's claim is for breach of an express term of his contract, i.e., compliance with the procedures of the NCCC handbook. Paragraph 2 of the contract states, "The Professional Employee [plaintiff] shall be subject to and abide by the Negotiated Agreement and the NCCC Board Policy." Further, Paragraph 5 of the contract provides, "This Contract is subject to the statutory provisions of the State of Kansas." Under these circumstances, we simply do not agree that this language expressly incorporated the NCCC policy handbook as a "material term of the contract" and thus provide plaintiff with a breach of contract claim.

Similar to the Board policies and procedures at issue in *Burk*, the nonrenewal procedures at issue here were enacted by the Board pursuant to the Evaluation of Certificated Personnel Act, Kan.Stat.Ann. § 72–9002–9005. To the extent they are inconsistent with the Due Process and Administrators' Acts, they are ultra vires and void. *Burk*, 646 F.Supp. at 1564–65. As such, they cannot be relied on to create material terms of an enforceable contract. Accordingly, plaintiff cannot maintain a claim for breach of contract based on noncompliance with those procedures. *See id.*

█ Moreover, even if we assume that the nonrenewal procedures set forth in the NCCC handbook were terms of an enforceable contract, there is no evidence that plaintiff suffered any recoverable damages. It is uncontroverted that plaintiff was paid the entire amount due under the contract. Short of a bald assertion that plaintiff is entitled to have a jury assess the extent to which he was damaged, plaintiff has failed to come forward with any evidence of economic damages. Further, because the procedures do not provide plaintiff with a claim for continued employment, the Board's failure to follow them does not justify recovery of damages in the form of the salary he would have received if the contract had been renewed.

In addition, to the extent that plaintiff is seeking to recover noneconomic damages for emotional upset under his breach of contract claim, plaintiff has not cited a single authority in support of his position. Suffice to say, we are more persuaded by the myriad of cases from numerous jurisdictions cited by the Board in support of its assertion that emotional damages are not recoverable for breach of contract. For all these reasons, the Board's motion for summary judgment on plaintiff's breach of contract claim will be granted.

█ Finally, to the extent that plaintiff attempts to raise a breach of contract claim

against defendant Kirkland, summary judgment is proper. Plaintiff has not presented any evidence that defendant Kirkland was a party to plaintiff's employment contract. It is fundamental, then, that even if plaintiff's breach of contract claim were viable, Kirkland would not be a proper party to such a claim.

### Wrongful Discharge

■■■ Plaintiff's common law wrongful discharge claim against the Board and Kirkland in his official capacity is preempted by Title IX as an adequate and exclusive remedy. *See Polson v. Davis,* 635 F.Supp. 1130, 1149–50 (D.Kan.1986), *aff'd,* 895 F.2d 705, 709 (10th Cir.1990) (claim for retaliatory discharge under the public policy exception to the employment-at-will doctrine is not available unless there is no other adequate remedy available). Plaintiff concedes this point to the extent he is permitted to bring his Title IX claim.

■■■ Plaintiff has done a poor job of clearly setting out the exact nature of each allegation against each defendant in both his complaint and the pretrial order. To the extent that plaintiff attempts to raise a wrongful discharge claim against Kirkland in his individual capacity (a claim arguably not preempted by Title IX because of Kirkland's qualified immunity), factual issues regarding whether Kirkland's actions in recommending plaintiff's nonrenewal were malicious, willful or wanton preclude summary judgment. *See Murphy v. City of Topeka,* 6 Kan.App.2d 488, 494, 630 P.2d 186, 191 (1981) (allowing action against city agency supervisory personnel for retaliatory discharge as individuals acting in abuse of their authority where plaintiff alleged malicious, willful and wanton conduct by the officials). Accordingly, defendant Kirkland's motion for summary judgment will be denied.

### Punitive Damages

Defendants also seek summary judgment on plaintiff's claims for punitive damages. Plaintiff concedes that he cannot maintain a claim for punitive damages against the Board or Kirkland in his official capacity. To the extent that plaintiff seeks punitive damages on his claims against Kirkland in his individual capacity, the court reserves ruling on Kirkland's motion until trial.

The court notes that due to the impending October 30, 1995, trial date, and the late filings by the parties, some of the issues raised by the parties in their briefs have not been fully addressed in this opinion. The court reserves the right to write more fully on these issues in the event of an appeal or to consider an appropriate motion at trial.

### Trial Briefs

The present record before the court gives the court some concern about plaintiff's ability to show recoverable damages. Accordingly, the parties will be directed to file pretrial briefs and to specially brief the following issues: the types of damages allowable under Title IX and the intentional discrimination requirement for recovery of money damages under Title IX as enunciated in *Franklin v. Gwinnett County Public Schools,* 503 U.S. at 75–76, 112 S.Ct. at 1038.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. # 61) is GRANTED with respect to plaintiff's Title IX claims against defendant Kirkland in his individual capacity; and claims for punitive damages, breach of contract claims, and wrongful discharge against the Board; and DENIED with respect to plaintiff's Title IX claim against the Board; section 1983 claims against the Board and Kirkland in his official capacity; and claims against Kirkland in his individual capacity for First Amendment violations under section 1983 and for wrongful discharge.

IT IS FURTHER ORDERED that the parties shall submit jury instructions and trial briefs, as set forth herein, on or before 5:00 p.m. on Wednesday, October 25, 1995.