**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEVE BELCHER,

     Plaintiff - Appellant,

v.

CITY OF MCALESTER, Oklahoma, a
municipal corporation; JOE BENSON
and RANDY GREEN, individually,

     Defendants - Appellees.

No. 02-7076

---

**Appeal from the United States District Court**
**for the E. District of Oklahoma**
**(D.C. No. 01-CV-577-S)**

---

Douglas D. Vernier (James R. Moore and James Patrick Hunt with him on the
briefs), James R. Moore & Associates, P.C., Oklahoma City, Oklahoma for the
Plaintiff-Appellant.

Charles S. Plumb (Jon E. Brightmire and R. Charles Wilkin III with him on the
brief), Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma for the
Defendants-Appellees.

---

Before **BRISCOE**, **ANDERSON**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Steve Belcher, a firefighter in McAlester, Oklahoma, claims that his First Amendment rights were violated when he was reprimanded for urging members of the McAlester City Council ("Council") not to approve the purchase of a new fire truck. Because Belcher could have expressed his concerns in a less disruptive manner, the district court ruled that Belcher's speech was not protected by the First Amendment. Belcher appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I**

Since 1980, Belcher has been a member of the McAlester Fire Department ("Department"). In the summer of 2000, one of the Department's fire trucks (Unit 112) was taken out of service, and the Department determined that the purchase of a new fire truck was necessary. Accordingly, the City of McAlester ("City") posted notice that the Council would, at its public meeting on July 25, discuss waiving the standard bidding procedure so that the Department could immediately purchase a new truck called Rescue One.

Belcher did not attend the July 25 Council meeting for personal reasons. Instead, on the day the meeting was scheduled to be held, Belcher contacted three Council members by telephone and one council member in person, expressing concerns about the proposed purchase of Rescue One. Belcher was concerned

that Rescue One would not meet the fire suppression needs of the City,[1] that Rescue One was too expensive, and that, because of "the possibility of corruption and kickbacks," waiving the competitive bidding process was problematic. (1 Appellant's App. at 130.) Belcher did not voice any of these concerns to his superior officers at the Fire Department or to Randy Green, the City Manager, prior to contacting the Council members. Despite Belcher's concerns, the Council voted to waive the bidding procedure, and the City purchased Rescue One.

Under City Administrative Policy No. 35, City employees are prohibited from contacting Council members except by addressing the Council at a public meeting. Violation of Policy No. 35 can be punishable by a written reprimand, followed by suspension and even dismissal. In addition, Section 111 of the Fire Department's Rules and Regulations provides that "contact of [a] legislative body without authorization in reference to operations or personnel of Municipal Government" can be a basis for demotion, suspension, or dismissal. (1 Appellant's App. at 307.) As Belcher was a City employee and a Department employee, both of these regulations applied to him.

On July 28, 2000, Fire Chief Joe Benson issued a written reprimand to Belcher for contacting the Council members in violation of City Policy No. 35,

---

[1] Specifically, Belcher was concerned that Rescue One would not be effective at fighting grass fires.

Section 111 of the Fire Department Rules, and other applicable regulations. Benson informed Belcher that his actions "were detrimental to the function of the Fire Department and protection of the City," and noted that Belcher made no effort to contact his supervisors regarding the proposed purchase of Rescue One. (1 id. at 208.) Benson further notified Belcher "that any more violations of this type will result in more severe disciplinary action up to and or including dismissal from the McAlester Fire Department." (1 id. at 209.)

In October 2001, Belcher filed an action in federal court under 42 U.S.C. § 1983 against the City, Fire Chief Benson, and City Manager Green (collectively, "defendants"), claiming that his reprimand violated the First Amendment and Oklahoma state law. Depositions were taken in March 2002, and in April both parties moved for summary judgment. Having reviewed the evidence, the district court concluded that Belcher's speech was not entitled to First Amendment protection and granted summary judgment to the defendants.[2] Belcher appeals this decision.

## II

"We review the district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court." Simms v. Okla. ex

_____

[2] The district court also ruled that individual defendants Benson and Green were entitled to qualified immunity and declined to exercise supplemental jurisdiction over Belcher's state law claims.

- 4 -

rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms, 165 F.3d at 1326.

In First Amendment cases in particular, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Schalk v. Gallemore, 906 F.2d 491, 494 (10th Cir. 1990) (quotation omitted). "However, the underlying historical facts upon which the constitutional claim is grounded are subject to the traditional standards of review governing the treatment of historical facts in any other case." Saye v. St. Vrain Valley Sch. Dist. RE-1J, 785 F.2d 862, 865 (10th Cir. 1986).

**A**

In Pickering v. Bd. of Educ., 391 U.S. 563 (1968), and its progeny, the Supreme Court has articulated a four-part test for determining whether a public

employer's actions impermissibly infringe on free speech rights of employees.[3]

We have summarized the <u>Pickering</u> factors as follows:

> First, the court must decide whether the speech at issue touches on a matter of public concern. If it does, the court must balance the interest of the employee in making the statement against the employer's interest in promoting the efficiency of the public services it performs through its employees. Third, if the preceding prerequisites are met, the speech is protected, and plaintiff must show her expression was a motivating factor in the detrimental employment decision. Finally, if the plaintiff sustains this burden, the employer can still prevail if it shows by a preponderance of the

---

[3] In <u>United States v. NTEU</u>, 513 U.S. 454, 468 (1995), the Supreme Court modified the <u>Pickering</u> standard for cases where a statutory restriction, in contrast to an isolated disciplinary action, "chills potential speech before it happens." <u>NTEU</u> involved a federal statute prohibiting federal employees "from accepting any compensation for making speeches or writing articles." <u>Id.</u> at 457. In order for such a broad prohibition on speech to be upheld, "[t]he Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's necessary impact on the actual operation of the Government." <u>Id.</u> at 468 (quotation omitted). The Court further noted that the breadth of the statute must be "reasonably necessary to protect the efficiency of the public service." <u>Id.</u> at 474.

We have not yet had occasion to determine whether *NTEU*'s modified standard "depends upon all of the factors present in that case—a broad statutory ban which operated as a prior restraint applicable to a very large group of employees—or whether any of those factors, or some combination thereof, justify the greater burden." <u>Arndt v. Koby</u>, 309 F.3d 1247, 1252 n.3 (10th Cir. 2002). In the instant case, the prior restraint on speech imposed by the City and the Department is narrow and affects only a relatively small group of employees. While Belcher's speech was censored pursuant to City and Department regulations, those regulations only applied to comments made <u>in private</u> to Council members, and speech made in public was expressly permitted. This is a far more narrowly tailored restriction on speech than the statute at issue in <u>NTEU</u>. Accordingly, we conclude that the <u>NTEU</u> standard is inapplicable on these facts.

evidence that it would have made the same decision regardless of the protected speech.

Schalk, 906 F.2d at 494–95 (quotation and citations omitted) (summarizing the relevant Supreme Court jurisprudence).  In the instant case, only the first two factors are at issue.  The district court determined that Belcher's speech touches on a matter of public concern, but found that the second factor—the balance of interests—tips in favor of defendants.[4]

---

[4]  Implicit in the Pickering test is a requirement that the public employer have taken some adverse employment action against the employee.  See Koch v. City of Hutchinson, 847 F.2d 1436, 1440 (10th Cir. 1988) (noting that Pickering and its progeny "establish the basic framework for analyzing a claim by a public employee that his or her governmental employer made an adverse employment decision in violation of the employee's First Amendment rights" (emphasis added)).  If the action taken by the employer in response to the employee's speech is inconsequential or has only speculative consequences, there can be no basis for a First Amendment claim.  See, e.g., Thomsen v. Romeis, 198 F.3d 1022, 1027–28 (7th Cir. 2000) (holding that written reprimands with only "speculative" consequences do not constitute adverse actions).  Defendants argue that the written reprimand issued to Belcher does not constitute an actionable adverse action.

We do not consider Belcher's reprimand so insignificant as to strip his speech of First Amendment protection.  The Supreme Court has explicitly recognized that "deprivations less harsh than dismissal" may trigger First Amendment protection.  See Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990).  While Belcher was not terminated as a result of his speech, the written reprimand specified "that any more violations of this type will result in more severe disciplinary action up to and or including dismissal from the McAlester Fire Department."  (1 Appellant's App. at 209.)  Threats of dismissal based on an employee's speech may constitute adverse employment action.  See Rutan, 497 U.S. at 64.

In reprimanding Belcher, the fire department chilled any future attempts to contact Council members outside of a public meeting.  We conclude that this

(continued...)

**B**

We consider the first <u>Pickering</u> factor, whether Belcher's speech touches on a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." <u>Connick v. Myers</u>, 461 U.S. 138, 147–48 (1983). In determining whether the speech touches on a matter of public concern, we look to whether it can "be fairly considered as relating to any matter of political, social, or other concern to the community." <u>Id.</u> at 146. It is not sufficient "that the topic of the speech be of general interest to the public; in addition, what is *actually said* must meet the public concern threshold." <u>Schalk</u>, 906 F.2d at 495. Under our precedent, the speech "must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of the government." <u>Lee v. Nicholl</u>, 197 F.3d 1291, 1295 (10th Cir. 1999) (quoting <u>Wilson v. City of Littleton</u>, 732 F.2d 765, 768 (10th Cir. 1984)). An employee's speech is not removed from First Amendment protection simply because he expressed his views through a private forum. <u>See</u> <u>id.</u> at 1295.

In the instant case, the proposed purchase of Rescue One involved the City's tax dollars, and had the potential to impact the safety of the entire

---

[4](...continued) chilling effect is real, and that Belcher has shown that he was subject to adverse employment action as a result of his speech.

community for years to come.[5]  Moreover, because the purchase of the fire truck was imminent, Belcher's actual speech was of potential concern to the Council and therefore to the community.[6]  That the Council may have ultimately disregarded Belcher's views does not mean they were irrelevant.  Thus, the purchase of the fire truck involved a "matter of . . . concern to the community," satisfying the first Pickering factor.

## C

We proceed to consider the second Pickering factor, whether Belcher's interest in speaking out against the purchase of Rescue One outweighs the Department's interest in promoting the efficiency of the public services it performs through its employees.  In Pickering, the Supreme Court held that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the

---

[5]  We reject defendants' argument that Koch v. City of Hutchinson, 847 F.2d 1436, 1447 (10th Cir. 1998), is dispositive on this issue.  Koch involved a fire marshal's report on the cause of a single fire, which was determined not to involve a matter of public concern.

[6]  Defendants argue that, because Belcher had no facts or evidence supporting his allegation that the purchase of the truck would involve corruption or "kickbacks," his speech did not sufficiently inform the issue as to be helpful to the public.  Belcher also objected to the purchase, however, on the ground that Rescue One would not adequately serve the fire protection needs of the City.  On this issue, Belcher's viewpoint as a firefighter might have been valuable to the City Council members, who presumably were not experts on the advantages and disadvantages of different fire trucks.

speech of the citizenry in general." 391 U.S. at 568. Thus, in applying the second Pickering factor, we balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. An employee's First Amendment rights are protected "unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." Wren v. Spurlock, 798 F.2d 1313, 1318 (10th Cir. 1986) (quotation omitted). Pertinent considerations include whether the statement (1) "impairs discipline by superiors or harmony among co-workers"; (2) "has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary"; or (3) "impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." Rankin v. McPherson, 483 U.S. 378, 388 (1987) (citing Pickering, 391 U.S. at 570–73).

"In performing [Pickering] balancing, [an employee's] statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." Rankin, 483 U.S. at 388. In considering the time, place, and manner of the speech, we take into account whether the employee used "less disruptive internal channels" of communication. See Lytle v. City of Haysville, 138 F.3d 857, 865 (10th Cir.

1998).  In the instant case, Belcher could have used "less disruptive internal channels," id., by explaining his concerns to his superior officers at the Fire Department and following the chain of command.  Instead, Belcher chose to go outside the Department, speaking directly to Council members in violation of Department and City policy, diminishing the level of protection his speech might otherwise enjoy.

Belcher's interest in speaking privately to the Council members must be weighed against the contrary interests of the City and the Department in maintaining harmony among Department employees.  "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate."  Koch v. City of Hutchinson, 847 F.2d 1436, 1452 (10th Cir. 1998) (quoting Connick, 461 U.S. at 151–52).  Because such close relationships are necessary in a fire department, there is a "heightened governmental interest in maintaining harmony" among fire department employees.  Id. at 1452 n.22 (holding that fire departments are analogous to police departments in this respect).  Firefighters place their lives in each others' hands, and it is essential that each firefighter have trust in his colleagues.

Belcher argues that, in order to show that his speech had a detrimental impact on the functioning of the Department, defendants must show actual

disruption rather than potential disruption.[7]  We need not decide this issue, because there <u>was</u> evidence that Belcher's actions caused actual disruption in the Department.  Fire Chief Benson testified at his deposition that three mechanics and several captains were upset by Belcher's efforts to derail the purchase of Rescue One.  These Department members were upset not only by the content of Belcher's speech, but by the fact that he violated the chain of command by speaking directly to the Council.  Belcher himself admitted that his comments, and the manner in which he conveyed them to the Council, caused controversy or friction within the fire department and made other firefighters distrustful of him.  This evidence supports the district court's finding of actual disruption.

In sum, Belcher's narrow interest in expressing his concerns through external channels, in violation of City and Department policy, when weighed against the heightened interest of the City and the Department in maintaining harmony among firefighters and their officers, tips the scales on the City's side.

---

[7]  We have stated that the government "must produce evidence of an actual disruption of services which results from the employee's speech."  <u>Schalk</u>, 906 F.2d at 496 (citation omitted).   More recently, however, we have held that, while mere speculation about possible disruption does not satisfy the <u>Pickering</u> test, the government need not "wait for speech actually to disrupt core operations before taking action."  <u>Moore v. City of Wynnewood</u>, 57 F.3d 924, 934 (10th Cir. 1995).

Thus, Belcher's speech is not protected, and the district court correctly granted summary judgment to defendants.[8]

## III

The judgment of the district court is **AFFIRMED**.

---

[8] Because the district court properly found that Belcher's speech is not entitled to First Amendment protection, we do not reach the issue of qualified immunity raised by defendants.