**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 27, 2006**

**TENTH CIRCUIT**

SHERYL PALONI,

      Plaintiff - Appellant,

v.

CITY OF ALBUQUERQUE POLICE
DEPARTMENT,

      Defendant - Appellee.

Nos. 05-2131, 05-2338
(District of New Mexico)
(D.C. No. CIV-03-513 BB/ACT)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **BRORBY,** and **TYMKOVICH**, Circuit Judges.

I.    **Introduction**

    Former Albuquerque Police Officer Sheryl Paloni sued the City of

Albuquerque Police Department ("City" or "Department"), claiming various

violations of Title VII, state law constructive discharge, and First Amendment

retaliatory discharge.  The district court determined Paloni had not demonstrated

_____

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec.
1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

a genuine issue of material fact whether she had suffered an adverse employment action. The district court accordingly ruled the City was entitled to judgment as a matter of law on Paloni's federal and state law claims and awarded costs to the City as the prevailing party. Paloni appeals the district court's decision on both the merits and the award of costs. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's grant of summary judgment on all of Paloni's claims and **affirms** the award of costs to the City.

## II.    Background

Paloni's claims arose from an Albuquerque Police Department Internal Affairs investigation into several officers' use of firearms during the apprehension of a bank robber. In an attempt to stop the suspect's escape, Paloni and her partner, female officer Paulette Mashburn, shot at the tires of the suspect's vehicle with their sidearms. This use of their handguns under the circumstances known to them at the time of the shooting violated the Department's standard operating procedure ("SOP") 2-52-3-B on the use of deadly force.[1] Later in the encounter with the suspected robber, a male officer, Anthony Montano, also shot at the suspect's tires with a handgun. Internal

---

[1] The SOP authorized officers to shoot at the tires of a vehicle in order to "[p]rotect the officer and others from what is reasonably believed to be an immediate threat of death or serious physical injury" and "[p]revent the escape of one reasonably believed to have committed a felony . . . ." Aplt. App. Vol. II at 451. Furthermore, the SOP directed "Officers will only use their shotgun or authorized rifle for this purpose. Sidearms will not be used." *Id.*

Affairs investigators ultimately determined Paloni and Mashburn needed retraining on the use of deadly force. The investigators did not order similar retraining for Montano or other male officers involved in the incident, finding the information known to Montano and the others at the time they shot at the vehicle justified the decision to shoot, even if their use of a handgun rather than a shotgun or rifle was contrary to the SOP's direction. Two of Paloni's supervisors approved the Internal Affairs' retraining recommendation as an appropriate sanction for the two female officers.

After the Internal Affairs recommendations were released in late June 2002, Paloni complained publicly and to Chief of Police Gilbert Gallegos ("the Chief") about the disparate discipline imposed on Mashburn and herself. In response to Paloni's complaints, Chief Gallegos said publicly Paloni needed to "cool her jets." In June and again in early August 2002, Paloni asked the Chief to review the Internal Affairs findings, but it took him until September 5, 2002, to do so. On September 5 Chief Gallegos sent memoranda to Paloni, Mashburn, and Montano in which he "exonerated" each of the officers of any wrongdoing and classified the shooting incidents as "justifiable." Gallegos nonetheless ordered all three officers to be retrained on the "SOP and other matters as determined by the Director of Training." The Chief's actions came too late, however. On September 4 Paloni wrote the Chief a letter, again expressing her belief about the

Department's discriminatory actions and giving the Chief notice of her intent to resign on September 19.

In her letter to the Chief and during this litigation, Paloni contends she had no choice but to resign from the Department because the Department's discriminatory treatment compromised her position with her fellow officers, undermined the camaraderie she once shared with them, and resulted in her loss of confidence and security on the job. After exhausting her administrative remedies under Title VII, Paloni brought suit alleging she suffered disparate treatment, was retaliated against, and was constructively discharged because of her gender. She further alleged her public statements about the Department's discriminatory treatment resulted in retaliation barred by the First Amendment.

## III. Discussion

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This court reviews a grant of summary judgment *de novo*, using the same standard as the district court. *Sandoval v. City of Boulder*, 388 F.3d 1312, 1320 (10th Cir. 2004). We "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id*. There is a genuine issue of material

fact only if the nonmovant presents facts that could lead a reasonable jury to find in the nonmovant's favor. *Simms v. Oklahoma, ex rel., Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). If this court determines there is no genuine issue of material fact, we must still examine whether the district court's application of substantive law was correct. *Id.*

## B.   Title VII Claims

Paloni raised several Title VII arguments before the district court. Alleging disparate treatment, Paloni argued she and Mashburn were ordered to attend retraining, while Montano and male officers were not. She contended the imposition of this discipline alone constituted discriminatory treatment.[2] Paloni also presented the following evidence of retaliation: William Moe, Paloni's former sergeant, testified in a deposition that adverse findings could "potentially" be tremendously damaging and said in an affidavit that, after Paloni complained about unequal treatment, the Chief spoke out against her; fellow officers looked condescendingly at Paloni when they saw her at a mall and Officer Montano said "Well, there's Sheryl Paloni;" and Officer Ron Brown testified in a deposition to hearing unidentified officers at the police gym criticizing Paloni and Mashburn. Paloni argued her fellow officers lost confidence in her and saw her as a

---

[2]The district court recognized a disagreement between the parties about whether retraining constituted discipline; the court decided, however, it did not need to resolve the issue because even if retraining were discipline, this type of discipline did rise to the level of an adverse employment action.

troublemaker, which could have endangered her in the field and, therefore, constituted retaliation for her complaints. Paloni also testified, however, that members of her own squad treated her well and it was only members of the Repeat Offender Unit who acted poorly towards her.

As the district court correctly stated, to make a prima facie case of disparate treatment Paloni had to show (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) similarly situated employees received treatment different from Paloni's. *Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). To survive summary judgment on her retaliation claim, Paloni had to demonstrate (1) she engaged in "protected opposition" to discrimination; (2) she suffered an adverse employment action during or after her protected opposition; and (3) there was a causal connection between the adverse employment action and her protected opposition.

*Id.*[3]  Thus, as the district court aptly noted, the finding of an adverse employment action is a prerequisite to both types of Title VII claims.

An adverse employment action is one which constitutes "a significant change in employment status, such as hiring, firing, or failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  The district court found Paloni retained her pay, benefits, and rank despite being ordered to attend retraining.  The court also found no evidence of an adverse effect on future promotion opportunities.  After a review of this circuit's precedent, the district court concluded a single order that an officer be retrained on police procedures could not constitute an adverse employment action.

The district court, additionally, found no evidence to support Paloni's contentions that her colleagues' loss of confidence in her and her loss of confidence in herself constituted an adverse employment action for Title VII

---

[3] Although the issue had not been settled prior to the district court's decision, the district court cited to cases from other circuits to state that an objective standard applies to determine whether an employer's action was materially adverse.  The Supreme Court recently definitively ruled that an objective standard applies to Title VII retaliation claims. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006).  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*  (quotation omitted).  The district court thus correctly applied an objective standard when considering Paloni's claims.

purposes. Even employing this circuit's case-by-case approach, *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004), the court concluded Paloni's proffered evidence was insufficient to raise a genuine issue of material fact whether Paloni sustained a "significant change" in her employment status as the finding of an adverse employment action requires.[4]

The district court similarly rejected Paloni's claim that her retirement was a constructive discharge amounting to an adverse employment action. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004). "A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit." *Id.* The only Department action against Paloni was the retraining order. The district court determined a reasonable police officer in Paloni's position would not have "felt she had no choice but to resign simply because she had been found in violation of the deadly-force SOP and been ordered to undergo retraining on that subject." Paloni could not demonstrate an actual loss of confidence or animus among other officers which could have made the situation intolerable. The district court, accordingly, found no constructive discharge for Title VII purposes in this case.

---

[4]This court also notes other evidence in the record (not cited by the district court) shows Paloni was temporarily promoted to acting sergeant on several occasions before and after the shooting incident. At the very least, this tends to show her superiors' confidence in her was not eroded by the shooting incident.

Having reviewed the parties' briefs and the record, this court determines the district court properly granted summary judgment. Paloni failed to demonstrate Department actions adversely affected the terms and conditions of her employment or potential for future employment. She also failed to show her situation was so intolerable that she had no choice but to resign, as a constructive discharge claim requires. Paloni, therefore, did not present any tangible evidence of an adverse employment action. This court accordingly affirms the district court's grant of summary judgment on Paloni's Title VII claims for substantially the reasons set out in the district court's April 28, 2004, memorandum opinion and order.

## C. State Law Constructive Discharge Claim

The district court relied on its Title VII analysis when addressing Paloni's state law claims.[5] It noted New Mexico adopted Tenth Circuit Title VII standards in adjudicating state law constructive discharge claims. *Gormley v. Coca-Cola Enters.*, 109 P.3d 280, 282–83 (N.M. 2005). Because Paloni did not suffer an adverse employment action sufficient to prove constructive discharge under Title VII, the district court reasoned, her state law claim must fail as well.

---

[5]In the district court, Paloni alleged violations of state law on both constructive discharge and retaliatory discharge grounds. Before this court, Paloni raises only the constructive discharge claim.

For the reasons set out in our discussion of constructive discharge under Title VII and for substantially the reasons stated by the district court in its analysis, this court affirms the district court's April 28, 2004, grant of summary judgment on Paloni's state law claim.

### D.      First Amendment Retaliation Claim

Finally, in a separate memorandum opinion, the district court rejected Paloni's First Amendment claim of retaliation and granted summary judgment to the City.  To demonstrate an infringement of her First Amendment rights, an employee must show: (1) the speech involved a matter of public concern; (2) the employee's interest in speaking out outweighs the employer's interest in regulation; (3) the speech was a substantial motivating factor behind the employer's decision to take an adverse employment action against the employee. *Baca v. Sklar*, 398 F.3d 1210, 1218–19 (10th Cir. 2005).[6]  The district court correctly noted an employer's actions can satisfy the adverse employment action requirement in the First Amendment context even if the same action is insufficient to satisfy the adverse employment action requirement under Title VII. *Id*. at 1220.

---

[6]Only when an employee proves these three elements does the burden shift to the employer to show, using a preponderance of the evidence standard, "it would have reached the same decision . . . even in the absence of the protected conduct."  *Baca v. Sklar*, 398 F.3d 1210, 1219 (10th Cir. 2005) (citation omitted).

For the purposes of summary judgment, the City conceded Paloni's speech to the newspaper was on a matter of public concern and Paloni's interest in speaking outweighed the police department's interest in regulation. The district court, therefore, had only to determine whether the Chief's conduct constituted an adverse employment action under First Amendment jurisprudence and, if so, whether this conduct was substantially motivated by Paloni's speech.

The district court identified the Chief's actions as: (1) saying Paloni should "cool her jets" after Paloni released to the media a letter she had written to the Chief; (2) failing to issue his decision about the Internal Affairs recommendations until after Paloni submitted a resignation letter; and (3) exonerating Officers Paloni and Mashburn while still ordering these two officers, plus Officer Montano, to attend retraining on the SOP. Applying these findings to the spectrum of circumstances addressed in Tenth Circuit case law, the district court determined, as a matter of law, the Chief's conduct was not actionable as a First Amendment violation because Paloni failed to demonstrate an adverse employment action. The court thus found it unnecessary to address the causal connection between Paloni's speech and the Chief's actions.

In the First Amendment context, appellate courts are obligated to independently examine the whole record to ensure the plaintiff's right to free expression was not abridged. *Belcher v. City of McAlester*, 324 F.3d 1203, 1206 (10th Cir. 2003). Based on this court's independent reading of the record, the

-11-

district court correctly identified the Chief's actions. Taking these facts in a light most favorable to Paloni, as we are obligated to do, this court must conclude the Chief's conduct did not constitute an adverse employment action even under the relaxed First Amendment standard. Paloni, therefore, cannot proceed with her First Amendment claim. This court accordingly affirms the district court's grant of summary judgment to the City for substantially the reasons articulated by the district court in its April 15, 2005, memorandum opinion.

**IV. Conclusion**

For the reasons set out above, this court **affirms** the district court's grant of summary judgment to the City for substantially the reasons articulated by the district court. Because we affirm the district court's decision on the merits, we also **affirm** the award of costs to the City.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge